IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OAK RIVER EQUITY VENTURES, LLC, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:23-cv-446 |
| | : | |
| v. | : | Chief Judge Algenon L. Marbley |
| | : | |
| BOSS LIFESTYLE LLC, *et al.*, | : | Magistrate Judge Kimberly A. Jolson |
| | : | |
| | : | |
| Defendants. | : | |

**OPINION AND ORDER**

This matter is before this Court on Plaintiff Oak River Equity Ventures, LLC's ("Oak River") Motion for Summary Judgment (ECF No. 39) and Defendants Boss Lifestyle LLC's and Tyler Bossetti's Motion for Stay (ECF No. 51). For the reasons that follow, Plaintiff's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART** and Defendant's Motion for Stay is **DENIED**.

I.  BACKGROUND

In June 2022, Defendants Boss Lifestyle LLC and Tyler Bossetti jointly executed a Promissory Note, promising to pay Plaintiff Oak River $1,125,000 no later than November 30, 2022, in exchange for a $900,000 loan. (ECF No. 39-2 at 1). Before the maturity date, Defendants informed Plaintiff that they would be unable to pay and requested an extension, which Plaintiff granted. (*Id.* at 2). The Parties then executed an Amended Promissory Note on December 7, 2022, in which Defendants jointly promised to pay Plaintiff $1,162,500 by January 6, 2023. (*Id.*). The interest rate on the Amended Promissory Note is 50% per annum, in addition a 5% supplemental default interest charge on the delinquent principal and interest, and a one-time 5% late charge. (*Id.* at 15). Defendants, however, have failed to make the required payment. (*Id.* at 3).

1

Plaintiff initiated this lawsuit on January 27, 2023.  (ECF No. 1).  Following a contentious discovery period (*see e.g.,* ECF Nos. 33, 37), Plaintiff filed the subject Motion for Summary Judgment (ECF No. 39).  The Motion is now ripe for review.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact[,] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716-17 (6th Cir. 2012). The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the non-moving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249-50.

The party seeking summary judgment shoulders the initial burden of presenting the Court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (finding that after the burden shifts, the non-movant must "produce evidence that results in a conflict of material fact to be resolved by a jury").  In considering the factual allegations and evidence presented in a motion for summary judgment, the

Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

### III. LAW & ANALYSIS

#### A. Liability

Defendants do not contest liability, but this Court must still consider whether Plaintiff is entitled to judgment as a matter of law. *See Sutton v. United States*, 922 F.2d 841 (6th Cir. 1991) ("Rule 56 requires a court, even where a motion for summary judgment is unopposed, to determine that the moving party has established a right to relief as a matter of law and that no genuine issue of material fact exists before the court can award summary judgment."). Under Ohio law, which governs this dispute per the terms of the Amended Promissory Note, "[t]he elements of a breach of contract claim are the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Dawson v. Allstate Vehicle & Prop. Ins. Co.*, 2024 WL 22735, at *3 (S.D. Ohio Jan. 2, 2024) (quoting *Becker v. Direct Energy, LP*, 112 N.E.3d 978, 988 (Ohio Ct. App. 2018)). It is undisputed that the Parties entered into a Promissory Note, that Oak River performed its obligations, that the Parties agreed to an Amended Promissory Note, which gave Defendants more time to pay, and that Defendants have not yet paid. As a result, it is evident that Defendants breached the Amended Promissory Note, and that Oak River was damaged by Defendants' failure to repay the monies owed. With respect to liability, there is no dispute as to material fact and Plaintiff is entitled to judgment as a matter of law.

#### B. Interest

Defendants' only argument in response to Plaintiff's Motion for Summary Judgment is that the rate of interest on the Promissory Note and Amended Promissory Note is illegally high—i.e.

3

usurious—and should be invalidated. There are two relevant types of interest: prejudgment and postjudgment interest.

### 1. *Prejudgment Interest*

In executing the original Promissory Note in June 2022, Defendants borrowed a principal loan amount of $900,000, and interest was to accrue on that amount at an admittedly breathtaking rate of 50% per annum. As a result, Defendants were to pay Oak River $1,125,000 by the end of November 2022. In early December 2022, however, Defendants executed an Amended Promissory Note, this time agreeing to pay Oak River $1,162,500 by January 6, 2023. In addition to the 50% interest accruing on the Principal, the Amended Promissory Note also permits Oak River to charge a one-time 5% late fee on any amount not paid within a ten-day grace period after it is due, and a supplemental 5% default interest rate on all delinquent principal and interest.

"In diversity cases in [the Sixth Circuit], federal law controls postjudgment interest but state law governs awards of prejudgment interest." *F.D.I.C. v. First Heights Bank, FSB*, 229 F.3d 528, 542 (6th Cir.2000) (citing *Clissold v. St. Louis—San Francisco Ry. Co.*, 600 F.2d 35, 39 n. 3 (6th Cir.1979)). And while Ohio law sets a statutory rate for prejudgment interest, when "a written contract provides a different rate of interest in relation to the money that becomes due and payable . . . the creditor is entitled to interest at the rate provided in that contract." Ohio Rev.Code Ann. § 1343.03(A). Here, there is no debate that the Amended Promissory Note provides a different rate of interest than the Ohio statutory rate of 8%: it specifies that the 50% interest per annum accrues on the loan, plus a 5% supplemental default interest fee and a one-time 5% late fee.

The question that Defendants raise is whether the stipulated rate is so high as to be usurious. Ohio has a criminal usury statute, which criminalizes "illegally charging, taking, or receiving any money or other property as interest on an extension of credit at a rate exceeding twenty-five per

4

cent per annum . . . unless . . . the rate of interest is otherwise authorized by law." Ohio Rev. Code § 2905.21(H). And § 2905.21(H)'s civil counterpart, Ohio Rev. Code § 1343.04, permits courts to invalidate interest that exceeds its statutory 8% cap, unless the loan in question falls within several enumerated exceptions. In Defendants' view, this Court should therefore invalidate the interest provision under which Plaintiff seeks to collect and set the interest rate at the statutory 8%.

Plaintiff points, however, to three exceptions to the 8% cap in the civil statute that are relevant here:

(1) the "original amount of the principal indebtedness . . . exceeds one hundred thousand dollars." *Id.* at § 1343.01(B)(1).

(2) the "instrument is payable on demand or in one installment and is not secured by household furnishings or other goods used for personal, family, or household purposes." *Id.* at § 1343.01(B)(5).

(3) the "loan is a business loan to a business association or partnership [or] a person and operating a business as a sole proprietor." *Id.* at § 1343.01(B)(6)(a).

And Plaintiff argues that when a loan falls within the exceptions to § 1343.04, it is "otherwise authorized by law" for the purposes of the criminal usury statute, and therefore exempt from the 25% cap, too. *See In re McLaren*, 110 B.R. 290, 296–97 (Bankr. N.D. Ohio 1990), *subsequently aff'd*, 990 F.2d 850 (6th Cir. 1993) (concluding that "the fact that the loan falls within the exceptions to the eight percent cap indicates that the [interest] should be deemed to be otherwise authorized by law within the meaning of section 2905.21(H)(1).").

Given that the original principal exceeded $100,000; the loan was payable in one installment and not secured by household goods; and it was a business loan made jointly to an LLC and a sole proprietor, it falls neatly within all three exceptions identified by Plaintiff. And

5

this Court is persuaded that loans falling within an exception to the 8% civil cap are "otherwise authorized by law" for the purposes of Ohio's criminal usury statute. *See In re McLaren*, 110 B.R. at 296–97.

In their brief response to Plaintiff's Motion for Summary Judgment, Defendants cite several cases in which courts have invalidated high interest rates under Ohio law. First, in *Classic Funding, LLC v. Louis Burgos, LLC*, an Ohio court did decline to "approve a judgment that on its face awards interest at a rate more than four times that considered to be criminally usurious," but it only did so because "the note presented does not facially support the judgment sought" and when the sort of judgment implicated in that case "is not supported by the note relied upon, the judgment is void for lack of subject matter jurisdiction." 2002-Ohio-6047, ¶¶ 9-15. The note purported to have a pre-default interest rate of 18.75% and a post-default interest rate of 24%, but the plaintiff sought a sum consistent with a 107% interest rate, with scant justification. *Id.* at ¶¶ 13-15. But no jurisdictional defect or grave inconsistency is present here.

Nor does Defendants' citation to a federal district court case that relies on *Classic Funding* get them much further. In *Core Funding Grp., LP v. McIntire*, a Louisiana district court applied Ohio law to an argument that a 46.25% default interest rate on promissory note was unconscionable. 2011 WL 1795242, at *7 (E.D. La. May 11, 2011). "To establish that a contract provision is unconscionable, two prongs must be met: (1) the terms of the contract are unfair and unreasonable, i.e., 'substantive unconscionability,' and (2) the individualized circumstances of the parties were such that no voluntary meeting of the minds was possible, i.e., 'procedural unconscionability.'" *Id.* at *6. The Louisiana district court reasoned that even though the loan in question fell within exceptions to § 1343.01, the Ohio state court's decision in *Classic Funding* indicated that the authority to set an interest rate exceeding 8% "is not limitless." *Id.* Putting aside

6

the question of whether the district court in *Core Funding* correctly interpreted the grounds on which the *Classic Funding* decision rests, this Court fundamentally agrees with the district court and "the majority of courts" that have found "interest rates between 35% and 50% . . . to be excessive, unreasonable, oppressive and unenforceable." *Id.*

But Defendants would need to show both substantive and procedural unconscionability. The extraordinary interest rate here is almost certainly enough to support a claim of substantive unconscionability, but there is no suggestion on the record before this Court that a meeting of the minds was impossible such that the provision was procedurally unconscionable.

As a result, this Court sees no basis on which to invalidate the interest rate on the Amended Promissory Note, despite finding it deeply troubling. *See Ohio Neighborhood Fin. Inc. v. Christie*, 2010-Ohio-5017, ¶ 10 (holding that an Ohio lower court abused its discretion by *sua sponte* lowering an interest rate that was permitted by law and agreed to by the parties). Because the Amended Promissory Note provides for 5% supplemental default interest on "[a]ll delinquent principal and interest . . . from the date such principal or interest is due," in addition to the preexisting 50% interest rate, interest has accrued at a rate of 55% per annum on the $1,162,500 due on the Note's maturity date, January 6, 2023. Therefore, $1,037,013.69 in interest has accrued on the $1,162,500 due at maturity. Defendants also owe Plaintiff a $58,125 late fee. In total, Defendants are, as of the date of this Order, liable to Plaintiff for $2,257,638.69.

2. *Postjudgment Interest*

Plaintiff is also entitled to postjudgment interest, pursuant to 28 U.S.C. § 1961. "The district court has no discretion to deny postjudgment interest, as it is mandatory." *Jackson*, 2023 WL 4933269, at *6. Under § 1961, "such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as

7

published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment," and shall apply to "the prejudgment interest element of the damages award, as well as any later awarded attorney['s] fees or costs." *Jackson v. Reliance Constr. Servs.*, LLC, No. 1:20-CV-799, 2023 WL 4933269, at *6 (S.D. Ohio Aug. 2, 2023). The post-judgment interest rate for judgments entered between August 12, 2024 and August 18, 2024 is 4.45%.[1]

In its Motion, Plaintiff suggests that "[t]he interest on the Amended Promissory Note is accruing and will continue to accrue interest at the Note Rate and Default Rate." (ECF No. 39-1 at 2). "While the Sixth Circuit has not squarely addressed the question of whether parties can contract around the statutory rate, most courts that have addressed the question have concluded that parties may agree to a different postjudgment rate." *Bay Venture Elyria, LLC v. Advanced Plastics Reclaiming, LLC*, 2014 WL 4472620, at *5 (N.D. Ohio Sept. 11, 2014). There is no indication, however, that they have done so here. "Simply specifying a general interest rate for debts under a contract does not constitute an agreement on postjudgment interest" because "under federal law, [o]nce a claim is reduced to judgment, the original claim is extinguished and merged into the judgment; and a new claim, called a judgment debt, arises." *Jack Henry & Assocs., Inc. v. BSC, Inc.*, 753 F. Supp. 2d 665, 670 (E.D. Ky. 2010), *aff'd*, 487 F. App'x 246 (6th Cir. 2012). Here, the Amended Promissory Note sets out the interest rate as "FIFTY AND 00/100 PERCENT (50%) PER ANNUM," and explains that it will be "computed on a 365/365 basis," "by applying the ratio of the interest rate over a year of 365 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding." (ECF No. 39-2 at

---

[1] The data used to reach this average is available at the following link: https://www.federalreserve.gov/releases/h15/.

8

14-15). Absent any indication that the Parties contracted to the contrary, this Court will hew to the federal statutory rate above, which will begin to accrue on the judgment as of the date of this Order.

### C. Sanctions

Plaintiff requests that this Court impose sanctions on Defendants in light of their "recalcitrance and/or willful refusal to comply with their discovery obligations or this Court's Orders." (ECF No. 39-1 at 4). Specifically, Plaintiff requests that this Court bar Defendants from offering rebuttal evidence.[2] (*Id.* at 4-5). Since Defendants do not contest liability, nor do they offer any rebuttal evidence, Plaintiff's request for sanctions is **DENIED AS MOOT**.

### D. Attorneys' Fees

Plaintiff argues that the terms of the Amended Promissory Note entitle it to reasonable attorneys' fees and costs. (*See* ECF No. 39-2 at 16 ("Maker promises and agrees to pay all costs and attorneys' fees, which shall include reasonable attorneys' fees in connection with any suit…")). Defendants, on the other hand, "object to the basis for, and reasonableness of, Oak River's purported attorneys' fees," (ECF No. 43 at 3), even though Plaintiff has not yet filed a Motion for Fees.

Plaintiff seems to think its entitlement to fees is obvious, and accordingly presents no legal authority for this view. It is not this Court's responsibility to make Plaintiff's argument for it. As a result, to the extent Plaintiff moves for summary judgment on the issue of fees, its Motion is

---

[2] At the conclusion of its argument, Plaintiff pivots, requesting that this Court prohibit Defendants "from defending any portion of Oak River's Summary Judgment Motion, either on the law, facts or quantum." (ECF No. 39-1 at 5). Such a passing reference, however, is insufficient to preserve any argument beyond Plaintiff's request that Defendants be barred from presenting rebuttal evidence.

**DENIED WITHOUT PREJUDICE**. Plaintiff is free to file a Motion for Attorneys' Fees pointing to the relevant state or federal law that supports its request.

### E.  Stay

After briefing on Plaintiff's Motion for Summary Judgment concluded, Defendants filed a Response to a Show Cause Order issued by the Magistrate Judge regarding Defendant Boss Lifestyle LLC's failure to secure counsel.  (ECF No. 51).  In that Response, Defendants request a stay of this litigation in light of an ongoing criminal investigation into their activities, conducted by the Federal Bureau of Investigation.  (*Id.*).  Defendants explain that they make the request to preserve Mr. Bossetti's Fifth Amendment right against self-incrimination.  (*Id.*).  Plaintiff strenuously objects to this request, arguing that: (1) a civil stay pending a criminal proceeding is an extraordinary remedy, and there is no criminal indictment, only an investigation; (2) Boss Lifestyle LLC cannot rely on Mr. Bossetti's personal privilege; and (3) given that Defendants have already conceded liability in this case, there are few—if any—opportunities remaining in this lawsuit for Mr. Bossetti to incriminate himself.  (ECF No. 54).

Plaintiff's final argument is dispositive: because this Court concluded above that Plaintiff is entitled to summary judgment with respect to liability, this Court is hard-pressed to see how any remaining litigation regarding costs and attorneys' fees would put Mr. Bossetti in a position to incriminate himself.  Accordingly, Defendants' Motion to Stay (ECF No. 51) is **DENIED**.

### IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 39) is **GRANTED IN PART** and **DENIED IN PART**.  Defendant's Motion to Stay Litigation (ECF No. 51) is **DENIED**.

**IT IS SO ORDERED.**

                                                                                                         */s/ Algenon L. Marbley*
                                                           **ALGENON L. MARBLEY**
                                                           **CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: August 20, 2024**

11